UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS ZURITA, on behalf of himself, individually, and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>          -against-<br><br>VAZA CONSTRUCTION CORP., KGKCANDELA CONSTRUCTION GROUP CO., INC., and VALENTIN ESPEJO, and MIRIAM CANDELA, individually,<br><br>                            Defendants. | **Dkt. No.: 1:24-cv-7772**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Luiz Zurita ("Zurita"), on behalf of himself, individually, and on behalf of all others similarly situated ("Plaintiff," "FLSA Plaintiffs" or "Rule 23 Plaintiffs," where appropriate) by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against VAZA CONSTRUCTION CORP., KGKCANDELA CONSTRUCTION GROUP CO., INC., and VALENTIN ESPEJO, and MIRIAM CANDELA, individually (collectively, "Defendants"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

<u>PRELIMINARY STATEMENT</u>

1.      Plaintiff brings this action on behalf of himself, individually, and all others similarly situated, to recover damages for Defendants' systemic and continuous violations of: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160 *et seq*., and New York Comp. Codes R. & Regs ("NYCRR") Tit. 12, § 142-2.2; (iii) the minimum wage provisions of the NYLL, NYLL §§ 198, 652, 12 NYCRR § 142-2.1; (iv) unpaid wages for past work performed in violation of the NYLL; (v) unlawful deductions to Plaintiff's wages in violation of

1

NYLL §193; (vi) the NYLL's requirement that employees performing manual labor receive their weekly pay on a timely basis and not later than seven calendar days after the end of the week in which the wages are earned per NYLL § 191(1), *et. seq*.; (vii) and the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3), as codified in the New York Wage Theft Prevention Act ("WTPA").

2.      Separately, Plaintiff also brings this action against Defendants for (viii) Defendants' violations of the anti-retaliation protections of NYLL § 215, culminating in Defendants' unlawful termination of Plaintiff's employment.

3.      Lastly, Plaintiff brings this action against Defendants for (ix) unlawful Age Discrimination in violation of the New York State Human Rights Law §296; (x) unlawful Age Discrimination under the New York City Human Rights Law §8-107; and (xi) any other claim(s) that can be inferred from the facts set forth herein.

4.      Defendants VAZA CONSTRUCTION CORP. ("Vaza"), and KGKCANDELA CONSTRUCTION GROUP CO., INC. ("KGK") (collectively, "Corporate Defendants") are two nominally distinct construction enterprises that are collectively owned and operated by VALENTIN ESPEJO ("Espejo") and MIRIAM CANDELA ("Candela"), individually.

5.      Though nominally distinct, these Corporate Defendants jointly and interchangeably employ workers, laborers, and other personnel to work at commercial and residential jobsites in and around the tri-state area, and New Jersey, with a significant presence in New York, making them a joint employer/single integrated enterprise managed jointly by Espejo and Candela.

6.      Plaintiff worked for Defendants as a construction and demolition worker from April 2018, through the wrongful termination of Plaintiff's employment on or about November 13, 2022.

7.      Despite regularly working beyond forty hours in a week, Defendants failed and refused to pay Plaintiff any overtime compensation for any hours Plaintiff worked beyond forty each week, resulting in Plaintiff suffering unpaid overtime compensation in willful violation of both the FLSA, and the NYLL.

8.      Plaintiff therefore brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of himself, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period, who suffered damages as a result of the Defendant's willful violations of the FLSA.

9.      In addition, Defendants violated the NYLL in several respects. First, Defendants failed to pay Plaintiff for all hours worked at or above the applicable minimum wage rate, in violation of the NYLL.

10.     Second, Defendants violated the NYLL in failing to pay Plaintiff all wages owed to him for all hours Plaintiff performed construction work for Defendants in violation of the NYLL.

11.     Third, Defendants made unlawful deductions to Plaintiff's regular wages in violation of NYLL § 193.

12.     Fourth, Defendants failed to pay Plaintiff his wages owed on a timely basis - - regularly requiring Plaintiff to wait weeks until Plaintiff could receive his pay - - and not later than seven calendar days after the end of the week in which Plaintiff's wages were earned, despite the fact that Plaintiff performed construction work consisting of manual labor, in violation of the frequency of pay provisions of NYLL § 191(1).

13.     Furthermore, Defendants failed to furnish Plaintiff with any accurate wage statements, let alone one accurately containing specific categories of accurate information on each payday per NYLL § 195(3), as codified by the New York Wage Theft Prevention Act ("WTPA").

14.     Plaintiff therefore brings his NYLL claims pursuant to the class action provisions of Fed. R. Civ. P. 23(b)(3), on behalf of himself and all other similarly situated workers who have worked for Defendants in New York.

15.     Separately, Defendants violated the anti-retaliation protections of NYLL § 215 by retaliating against Plaintiff - - and ultimately terminating Plaintiff's employment - - in response to Plaintiff's complaints of Defendants' unlawful wage practices and policies, as described herein.

16.     Defendants' retaliation against Plaintiff manifested, among other things, in the form of Defendants - - and Plaintiff's supervisors - - frequently transferring Plaintiff from one jobsite to another, and worse, making derogatory and unlawful agist comments about Plaintiff's age.

17.     Accordingly, to that end, Plaintiff also brings this action against Defendants for unlawful Age Discrimination in violation of (i) § 296 of the New York State Human Rights Law ("NYSHRL"), and (ii) § 8-107 of the New York City Human Rights Law ("NYCHRL"); as well as (iii) an unlawful hostile work environment in violation of NYSHRL § 296, and (iv) Title 8 of the NYCHRL; together with any other claims that can be inferred from facts set forth herein.

## JURISDICTION AND VENUE

18.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

19.     The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

20.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the herein claims for relief occurred in this judicial district.

21.     On March 20, 2020, then-New York Gov Andrew M. Cuomo signed Executive Order 202.8, which tolled for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued through subsequent extensions of that Order via Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, through November 3, 2020. In total, the Executive Orders provided for a toll of two hundred and twenty-eight (228) days.

## PARTIES

22.     At all relevant times, Plaintiff worked for Defendants in New York and was an "employee" entitled to all the protections as defined in the FLSA, NYLL, NYCRR, NYSHRL, and NYCHRL.

23.     Corporate Defendants are active domestic business corporations, each existing and operating pursuant to the laws of the State of New York, with a single, unified principal place of business and executive office located at 3311 Baychester Avenue, 2nd Floor, Bronx, NY 10469.

24.     Corporate Defendants are two nominally distinct construction companies that are collectively owned and operated by VALENTIN ESPEJO, individually ("Espejo") and MIRIAM CANDELA, individually ("Candela").

25.     At all relevant times, Corporate Defendants employed over one-hundred total employees at Defendants' various in state and out of state jobsites.

26.     Though nominally distinct, Corporate Defendants jointly and interchangeably employ the same workers, laborers, and other personnel to work at commercial and residential jobsites in and around the tri-state area, and in New Jersey, with a significant presence in New

York, making them a joint employer/single integrated enterprise managed jointly by Defendants Espejo and Candela.

27.     In addition to Defendants Espejo and Candela exercising direct control and oversight over Plaintiff's work schedules, and the work that Plaintiff, and his other co-workers performed at Defendants' jobsites, Defendants Espejo and Candela also hire various other "direct supervisors" whom, collectively, are responsible for managing the progress of the work performed at each of the Defendants' jobsites.

28.     Corporate Defendants together operate as a single enterprise and/or joint employer of Plaintiff, in that they each controlled the economic realities of each of the other Corporate Defendants, including controlling all terms and conditions of Plaintiff's and all others similarly situated individuals' employment, specifically with respect to hiring, firing, scheduling, maintaining employment records, and determining their rates of pay and administering their pay. Specifically, all documentation relating to Plaintiff is maintained by Defendants Espejo and Candela in one or all of the Corporate Defendants' corporate offices, and Corporate Defendants each exercise control over all of Plaintiff's work schedules by assigning work various jobs operated and staffed jointly by Corporate Defendants, thereby controlling the economic realities of their employment.

29.     Moreover, at all times relevant, each of the Corporate Defendants were and are a single integrated enterprise engaged in interstate commerce in that Corporate Defendants (i) have purchased goods, tools, and supplies for construction and scaffolding work such as, among other things, wood, construction materials, cement, sheetrock, and steel frames, among others, and large machinery, which constitute business through regular streams and channels of interstate commerce from vendors / suppliers that originated in and out of New York state; and/or have had two or more

employees engaged in interstate commerce or in the production of goods intended for commerce, and handle, sell and otherwise work with goods and material that have been moved in or produced for commerce by any person: and (ii) has had annual gross volume of sales of not less than $500,000.00. This status subjects Corporate Defendants to the FLSA's overtime requirements for enterprise coverage.

30.     By way of one example, Corporate Defendants required Plaintiff and similarly situated employees to handle, and work daily with the above-referenced construction-related items, and other goods for its business, all of which Defendants purchased and transported through channels of interstate commerce.

31.     Moreover, Corporate Defendants required Plaintiff and similarly situated employees to perform construction, scaffolding, roofing, and other manual work for Defendants' jobsites located both in, and out of the state of New York, including, without limitation, in New Jersey,  which subjects Defendants to the FLSA's overtime requirements.

32.     Accordingly, each Corporate Defendant was and is an employer of Plaintiff within the meaning of the FLSA, NYLL, and NYCRR.

***Defendants Espejo and Candela***

33.     Defendant Espejo is the operator, manager, and/or owner of Corporate Defendants.

34.     Defendant Candela is the owner, operator, and manager of Corporate Defendants.

35.     Defendant Espejo and Defendant Candela are jointly responsible for overseeing and controlling all individual and joint daily operations of Corporate Defendants, actively participate in the day-to-day operations of Corporate Defendants, and possess the power and authority over all final personnel and payroll decisions of Corporate Defendants.

36.     Defendant Espejo and Defendant Candela are jointly responsible for overseeing and

exerting direct control over all of Corporate Defendants' operations, including those at jobsites on which Plaintiff worked.

37.     Defendant Espejo and Defendant Candela jointly share and possess the power and authority to directly affect the quality of work conditions and employment of Plaintiff, and all other employees of Corporate Defendants.

38.     Defendant Espejo and Defendant Candela hired Plaintiff to work for Corporate Defendants, and ultimately terminated Plaintiff's employment with Corporate Defendants.

39.     Defendant Espejo provided instructions and directions to Plaintiff and the enterprises' other employees on how and when to perform their job duties, and supervised the work that Plaintiff performed each day.

40.     Defendant Espejo set and established Plaintiff's rate of pay, as well as any raises or changes to Plaintiff's pay, and paid Plaintiff his wages.

41.     Defendant Espejo and Defendant Candela generally paid Plaintiff his wages by Cash, or by a corporate check issued, from any one of the Corporate Defendants.

42.     Defendant Espejo set, established and determined Plaintiff's work hours and work schedule each week, and controlled which jobsite locations Plaintiff would work each week.

43.     Furthermore, Defendant Espejo and Defendant Candela were each responsible for maintaining all employment records of Corporate Defendants, including, without limitation, any and all records relating to Plaintiff's hours worked and pay.

44.     Accordingly, at all relevant times hereto, Defendant Espejo was Plaintiff's employer within the meaning and intent of the FLSA, the NYLL, the NYSHRL, and the NYCHRL.

45.     Accordingly, at all relevant times hereto, Defendant Candela was Plaintiff's employer within the meaning and intent of the FLSA, the NYLL, the NYSHRL, and the NYCHRL.

## FACTUAL ALLEGATIONS

46.     On or about April 1, 2018, Defendant Espejo and Defendant Candela hired Plaintiff to work as a construction worker and day laborer for Defendants.

47.     Plaintiff performed construction work for the Defendants at commercial jobsites primarily located in Brooklyn, Manhattan, the Bronx, and White Plains.

48.     Plaintiff's primary job duties tasked him with preparing and transporting the Defendants' construction materials from warehouses to the jobsites, erecting and demolishing large structures, and performing miscellaneous duties including, without limitation, roofing work, mechanical work, and other construction related physical labor.

49.     All of Plaintiff's job duties included performing manually laborious tasks.

50.     From April 2018 through December 2018, Plaintiff primarily worked at a jobsite located on Rector Street, in New York City.

51.     During this time, Plaintiff's regular work schedule consisted of six days per week, Monday through Saturday, from approximately 8:00 a.m. until approximately 4:30 p.m., for a total of eight and a half hours worked per day, and a total of 51 hours or more worked per week.

52.     In addition to his regular work schedule, Defendant Espejo and Plaintiff's other supervisors required Plaintiff to continue working until as late as 7:00 p.m., or later, depending on the needs of the specific job required.

53.     Furthermore, in addition to his regular work schedule, on "material delivery days" which occurred approximately two days per month - - or one day every two weeks - - Defendant Espejo and Plaintiff's other supervisors required Plaintiff to arrive at work as early as 6:00 a.m.

54.     As such, during 2018, Plaintiff was required to work, and Plaintiff did work, an average of 52 or more hours per week, every workweek.

9

55.    At the commencement of Plaintiff's employment in April 2018, Defendant Candela informed Plaintiff that Plaintiff's regular rate of pay would be in the amount of $15.00 per hour.

56.    However, during 2018, Defendants failed to pay Plaintiff his promised regular rate of pay - - nor by any hourly rate of pay - - and instead Defendants paid Plaintiff a flat weekly lump-sum wage of approximately $600.00 for all hours worked, in cash, and without any accompanying paystub, which, as explained below, equated to an hourly rate of pay below the applicable minimum wage rate. Plaintiff frequently complained to Defendants - -  nearly weekly - - about being paid his wage in cash, and frequently requested that Defendants instead pay him by check so that Plaintiff could properly pay his taxes; however, despite Plaintiff's protests, Defendants failed or refused to correct this issue with respect to Plaintiff's pay method until the following calendar year.

57.    Separately, and worse yet, Defendants never provided Plaintiff with any of his wages for his first week of work. Instead, Defendants informed Plaintiff that Defendants were "holding his first week of wages as a deposit." Despite Plaintiff's protests, Defendants never provided Plaintiff with his first week's pay, which wages rightfully owed to Plaintiff. Defendants' failure and refusal to pay Plaintiff these wages owed to Plaintiff constituted wage theft for past work performed in violation of the NYLL.

58.    Beginning in 2019, Plaintiff primarily worked at, without limitation, Defendants' jobsite located at 37 – 38th St and 3rd Avenue in Manhattan.

59.    During 2019, Plaintiff worked the same regular work schedule, and weekly number of hours in 2019, as Plaintiff worked during 2018.

60.    During 2019, Defendants paid Plaintiff a flat weekly lump-sum wage of approximately $625.00 for all hours worked, by check, and without any accompanying paystub.

61.     During 2019, Plaintiff frequently complained to Defendants, near weekly, about not receiving any overtime compensation at a rate of time-and-a-half his regular rate of pay, but despite Plaintiff's protests, Defendants failed or refused to correct this issue with respect to Plaintiff's overtime pay, and instead, Defendants embarked on a campaign of retaliating against Plaintiff in response to complaints about his pay.

62.     By way of example only, on several occasions, and in direct response to Plaintiff's complaints to Defendant Espejo and Plaintiff's other supervisors about not receiving any overtime pay, upon Plaintiff's arrival at work the following workday, Defendant Espejo and/or Plaintiff's other supervisors would suddenly and falsely inform Plaintiff that "there is no work for you today."

63.     Beginning in 2020, Plaintiff primarily worked under a new manager named Ramon, at, without limitation, Defendants' jobsite located at 5th Avenue & East 86th Street in Manhattan.

64.     During this time, Plaintiff's regular work schedule consisted of five days per week, Monday through Friday, from approximately 8:00 a.m. until approximately 4:30 p.m., for a total work week of approximately forty-two and a half hours, or more, worked per week.

65.     However, beginning in August 2020, and until May 2021, while Plaintiff was working at a Brooklyn jobsite, new managers named Manuel – and later, Faustino – took over supervision of the jobsite, who required Plaintiff to come in early to prepare materials, and thus begin at 6:00 a.m., and to end his workday at 7:00 p.m. or 8:00 p.m., Monday through Friday, for a total workweek of approximately sixty-five hours worked per week.

66.     Generally, during 2020 and 2021, Defendants paid Plaintiff a flat weekly lump-sum wage of approximately $750.00 for all hours worked, subject to Defendants' unlawful deductions to Plaintiff's pay described herein, by check, and without any accompanying paystub.

67.     During 2021, Plaintiff primarily worked at, without limitation, Defendants' jobsites located at 5th Avenue & East 86th Street, New York City; 255 18th Street, Brooklyn, NY 11215; 86 Park Avenue, New York, NY; and 60 Lexington Ave, New York, NY.

68.     From on or about January 2021 until on or about May 2021, Plaintiff's regular work schedule consisted of five days per week, Monday through Friday, from approximately 8:00 a.m. until approximately 4:30 p.m., for a total work week of approximately forty-two and a half hours or more worked per week.

69.     However, from on or about June 2021 until on or about December 2021, Plaintiff worked increased hours at Defendants' NYC Lexington building project in Manhattan, during which months, Plaintiff's regular work schedule began at 7:00 a.m., and ended at 6:00 p.m., 7:00 pm., or later, for a total of eleven to twelve hours per day,  five days per week, for a total workweek consisting of approximately sixty-five hours.

70.     During this time, Defendants paid Plaintiff a flat weekly lump-sum wage of approximately $850.00 for all hours worked, by check, and without an accurate paystub.

71.     Despite the small increase to Plaintiff's pay, beginning in or around January 2021, Defendants began paying Plaintiff with checks which were frequently unable to be cashed, due to Defendants' checks having "no funds," resulting in Defendants not paying Plaintiff his wages owed to him, or Defendants untimely paying Plaintiff his wages owed.

### *Defendants Retaliate and Discriminate Against Plaintiff*

72.     As a result of both Plaintiff's elongated work schedule, and Defendants' past continuous refusal to pay Plaintiff any overtime compensation, while working at Defendants' NYC Lexington building project, Plaintiff *frequently* complained to his direct supervisor, Segundo (*last name unknown*) about still not receiving any overtime compensation, to no avail.

73.     On at least one such occasion, Plaintiff's direct supervisor, Segundo, informed Plaintiff that Plaintiff should "stop complaining and instead tell the owners," who would continuously ignore Plaintiff.  Shortly thereafter, while Plaintiff was performing work at the jobsite, Segundo approached Plaintiff, in the presence of Defendant Espejo, and informed Plaintiff that "the owner says you are not wanted at this jobsite anymore," and that, "you will be transferred to a new building jobsite."

74.     As a result, in or around August 2021, Segundo complained of Plaintiff to Defendant Espejo, who, in turn, without justification, transferred Plaintiff to a new jobsite located in White Plains, NY, which was a four-hour commute for Plaintiff, and which Defendants were aware would substantially lengthen his commute and make his workday for more difficult each day.

75.     Despite Plaintiff's protests and complaints about his unreasonable transfer and commute, Defendants refused to transfer Plaintiff back to the former jobsite.

76.     In December 2021, Defendant Espejo approached Plaintiff, and informed Plaintiff that because of his wage-related complaints, "you will now be reporting to Brooklyn."

77.     From in or around January 2022 through on or about November 13, 2022, Plaintiff primarily worked at Defendants' jobsite to which Defendants reassigned Plaintiff, located at 255 18th Street, Brooklyn, NY 11215.

78.     During this time, Plaintiff's direct supervisor was Manuel Francisco.

79.     During this time, Plaintiff's regular work schedule consisted of five days per week, Monday through Friday, from approximately 7:00 a.m. until approximately 6:00 p.m., for a total work week of approximately 55 hours or more per week.

80.    During this time, Defendants paid Plaintiff a flat weekly lump-sum wage of approximately $850.00 for all hours worked, by check, and without any accompanying paystub.

81.    However, during this time, Defendants significantly increased their retaliation against Plaintiff in response to Plaintiff's frequent complaints about Defendants' failure to pay any overtime compensation.

82.    Specifically, from May 2022 through November 2022, Defendants provided Plaintiff with pay checks which, nearly every single week, Plaintiff was unable to cash, due to Defendants' checks having "no funds."

83.    Near weekly, Plaintiff complained to Defendants and/or to Plaintiff's direct supervisor about not being able to cash his paycheck - - and thus, about not being paid at all for the work he performed - - yet, Defendants and Plaintiff's direct supervisor continuously refused to remedy the issue, or issue Plaintiff new paychecks.

84.    During this time, Defendants issue Plaintiff at least thirty or more such faulty paychecks, which Plaintiff would learn, upon his attempt to cash them, "had no funds."

85.    Each week, when Plaintiff would arrive at a bank to cash his paychecks, the bank would reject Plaintiff's paychecks due to a lack of funds, and would frequently assess a penalty to Plaintiff, such as, without limitation, a "bounced check fee."

86.    On numerous occasions during this time, Plaintiff complained to Manuel Francisco about Defendants' checks having "no funds," and the resulting issues Plaintiff was experiencing with his bank, but rather than correcting the issue, Manuel Francisco would typically respond to Plaintiff that Plaintiff "must speak about it with Valentin [Espejo] and Miriam [Candela]."

87.    As such, on numerous occasions during this time, Plaintiff, in turn, complained to Defendants Espejo and Candela about Defendants' checks having "no funds," and the resulting

issues Plaintiff was experiencing with his bank, but rather than correcting the issue, Defendants Espejo and Candela blamed Plaintiff for "causing the issue," and would inform Plaintiff that the issue "was your own fault."

88.    Specifically, by Plaintiff complaining that he was unable to cash his paychecks, Defendants Espejo and Candela routinely accused Plaintiff of being "the problem," and informed Plaintiff that Plaintiff was "starting problems."

89.    To date, Defendants have failed to correct or remedy these issues of providing Plaintiff with faulty checks, and have failed to issue any new checks owed to Plaintiff for his past work performed.

### *Defendants Failed to Pay Plaintiff Any Overtime Compensation.*

90.    During all relevant times, from April 2018 through November 2022, Defendants paid Plaintiff a flat weekly wage for all hours worked, without any regard for the number of hours Plaintiff worked each day, or each week, whether few or many.

91.    Although Plaintiff regularly worked in excess of forty hours per week, Defendants failed to pay Plaintiff at a wage rate of time and a half (1.5) for his hours worked in excess of forty in a work week, a blatant violation of the overtime provisions contained in the FLSA, NYLL, and NYCRR.

92.    By way of example only, for work Plaintiff performed for Defendants during August 2022, during which time Plaintiff worked at least fifty-five hours or more per week each week of that month, Defendants paid Plaintiff by a lumpsum check on September 2, 2022, in the amount of $660.00 – which was *both* short of the approximately $850.00 for all hours worked which Defendants typically paid Plaintiff around that time, *and* which included no additional

compensation at a rate of time and half Plaintiff's regular rate of pay for each hour Plaintiff worked over forty in a work week.

93.     As a result, in the example set forth above, consistent with the entirety of Plaintiff's employment, Defendants never paid Plaintiff any overtime compensation for any of the hours he worked beyond forty during each work week in August 2022.

### *Defendants Failed to Pay Plaintiff a Minimum Wage from April 2018 through December 2019.*

94.     As outlined above, from April 2018 through December 2019, Defendants Failed to Pay Plaintiff at or above the applicable state minimum wage rate for each hour Plaintiff worked.

95.     By way of example only, from the last week of September 2021 through the first week of October 2021, when Plaintiff worked approximately sixty-five hours per week during each of these weeks, Defendants paid Plaintiff $750.00 for all hours worked, which equates to an hourly rate of pay of $11.50 per hour, and which fell below the state minimum wage rate of $15.00 per hour.

### *Defendants Failed to Pay Plaintiff on a Weekly Basis as a Manual Worker.*

96.     Making matters worse, Defendants failed to pay Plaintiff all wages owed on a timely basis.

97.     As a manual worker, Plaintiff was entitled to receive payment of his wages on a weekly basis.

98.     Defendant failed to compensate Plaintiff at least as frequently as on a weekly basis despite working as a manual worker.

99.     Beginning in or around May 2021, and for nearly each week during 2022, and specifically, during weeks when Plaintiff's manager was Segundo, Defendants failed to pay Plaintiff his earned wages not later than seven calendar days after the end of the week in which the

wages are earned.

100.    Defendants' failure to timely pay Plaintiff his wages often accumulated for weeks, during which time Plaintiff continued to work for Defendants, depriving Plaintiff of the benefit of his wages.

101.    As a result, Plaintiff was not paid the wages he was due when it was due, resulting in his actual concrete injury of underpayment of wages, during several months.

102.    Moreover, during these weeks, Plaintiff was denied the time-value of his money by Defendants' underpayments. Specifically, Plaintiff suffered actual monetary injury in that he was unable to invest, save, or purchase utilizing the wages he earned at the time value it held when it was due.

103.    During 2021, Defendants often required Plaintiff to wait weeks or months before receiving his wage(s), often covering past weeks Plaintiff worked.

### *Defendants Failed to Pay Plaintiff All Wages Owed.*

104.    As described herein, Defendants frequently provided Plaintiff with pay checks which Plaintiff was unable to cash, due to Defendants' checks having "no funds," and despite Plaintiff's complaints to Defendants about not being able to cash his paycheck - - and thus, about not being paid at all for the work he performed - - Defendants failed and refused to remedy the issue, or issue Plaintiff new paychecks, resulting in Plaintiff not being paid at all for past work performed for Defendants.

105.    Eventually, in January 2022, Defendant Candela directed Plaintiff to "come to the office to pick up the checks" that Defendant Candela had there for Plaintiff. When Plaintiff arrived, Defendant Candela informed Plaintiff that Plaintiff "must go to Western Union to deposit it." However, when Plaintiff did so, the Western Union representative informed Plaintiff that "we often

have problems with this company" and that "if there are no funds again, you'll receive a phone call and have to pay any fees."

106.    Approximately one month later, Plaintiff received a call from Western Union informing Plaintiff that, "the checks did not go through, and you now owe bounce fees."

107.    Furthermore, even when Defendants did pay Plaintiff, Defendants failed to provide Plaintiff with accurate paystubs, containing, among other things, his regular and overtime rates of pay, and his hours worked during each pay period.

108.    Plaintiff complained to Defendants about the lack of paystubs, and later when Defendants paid Plaintiff by check, about inaccuracies and discrepancies in pay documents, to no avail; Plaintiff's few paystubs rarely, if ever, contained any accurate information relating to Plaintiff's hours worked, regular and overtime rate of pay, or gross amounts earned per pay period.

109.    As a result, Defendants' FLSA violations were willful, and in furtherance of their efforts to conceal their unlawful conduct from Plaintiff and others similarly situated.

110.    Furthermore, Defendants' willfulness is also demonstrated by their failure to post notices of the overtime wage requirements in a conspicuous place at the location(s) of their employment as required by both the NYLL and the FLSA, in an attempt to conceal their unlawful conduct from Plaintiff and others similarly situated.

111.    Moreover, Defendants willfully failed to keep accurate and contemporaneous time and payroll records as required by both NYLL and the FLSA, in furtherance of their efforts to conceal their unlawful conduct from Plaintiff and others similarly situated.

112.    Defendants provided Plaintiff with paystubs that included fraudulent figures as to Plaintiff's actual hours in that they failed to account for all hours worked, as well as Plaintiff's amount pay, which reflected lower amounts than what Defendants actually paid Plaintiff - - each

of which are further indications of Defendants' willful violations of the FLSA, and bad faith refusal to attempt to comply with the law.

113.    These issues, combined with Defendants' failure to pay Plaintiff his wages earned in a timely manner following each pay period, prevented Plaintiff from being able to timely ascertain if his pay was accurate each pay period - - which Plaintiff later learned was not.

114.    Plaintiff suffered a concrete injury in fact due to Defendants' failure to provide timely and accurate wage statements on each pay day because, lacking any real documentation from Defendants that showed his true hours and pay, Plaintiff was unable to meaningfully advocate for himself and others due to the lack of accurate information provided to him during each pay period from Defendants.

115.    If the Defendants had provided Plaintiff with paystubs accurately reflecting the actual hours he works and has worked and that he was entitled to be paid for all hours, Plaintiff would have been able to advocate for himself and for his coworkers to be paid higher wages during their employment, exactly as Plaintiff is now doing through this action upon independently learning of his rights.

116.    Indeed, because Plaintiff was not aware that he should have received compensation at a rate of time and a half for his hours in excess of forty in a workweek, and because Plaintiff was not aware that he was entitled to be paid on a weekly basis, Plaintiff waited years before raising his legal complaints against Defendants, causing him to lose the time-value of the money he should have earned if he was accurately appraised of his total hours worked each week.

*__Hostile Work Environment & Age Discrimination__*:

117.    Even worse than Defendants' perpetual failures to pay Plaintiff properly, is Defendants' years long systematic campaign of discriminating against Plaintiff because of his age.

118.    Things took a sharp turn for the worse around January 2022, when Defendants began frequently making discriminatory and agist comments about Plaintiff, both directly to Plaintiff's face, and to Plaintiff's coworkers alike, concerning Plaintiff's age.

119.    By way of example only, when Plaintiff worked at Defendants' jobsite located at 60 Lexington, in NYC, Plaintiff's direct supervisor, Segundo, frequently commented about Plaintiff's age, often remarking directly to Plaintiff that he "was very old" and adding, among other things, that "he was trash."

120.    Plaintiff's opposition to his manager's hostile agist remarks was only met with further backlash, which hindered Plaintiff's ability to perform his job duties to the highest degree of efficiency that Plaintiff was capable of performing.

121.    Even upon Plaintiff's unwelcomed transfer to Defendants' jobsites located in Brooklyn, Plaintiff's new direct supervisor, Emmanuel Francisco, echoed the same agist, discriminatory, and harassing remarks as well concerning Plaintiff's age.

122.    Left with no other choice, when Plaintiff eventually began complaining to Defendant Espejo about these unwelcomed, agist, discriminatory, and harassing remarks, Defendant Espejo, too, joined in concert, and informed Plaintiff that Plaintiff "was too old," and that Plaintiff "should go to a nursing home."

123.    Ultimately, after several years of unmitigated abuse at the workplace, Defendants wrongfully terminated Plaintiff's employment on or about November 13, 2022, not only because of Plaintiff's repeated complaints about his improper pay, but also as a result of Plaintiff's opposition to Defendants' agism and bias against Plaintiff.

## **COLLECTIVE ACTION ALLEGATIONS**

124.    Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on his own behalf, as well as on behalf of those in the following collective:

> Current and former manual workers / construction laborers of Defendants, who during the applicable FLSA limitations period, performed work for Defendants and who consent to file a claim to recover damages for overtime compensation that is legally due to them; and/or liquidated damages that are legally due to them ("FLSA Plaintiffs").

125.    Defendants treated Plaintiff and all FLSA Plaintiffs similarly, in that Plaintiff and all FLSA Plaintiffs: (1) performed similar job duties and tasks, as described above; (2) were subject to the same laws and regulations; (3) were paid by Defendants in the same or similar manner; (4) were regularly required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay, for all hours worked per workweek in excess of forty.

126.    At all relevant times, Defendants have been aware of the requirements to pay Plaintiff and all FLSA Plaintiffs at the rate of one and one-half times their respective regular rate of pay for all hours worked each workweek above forty, yet purposefully and willfully chose and choose not to do so.

127.    Defendants' willful violations of the FLSA are evidenced by their knowledge that their policies violated the FLSA, and their intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements. Further, discovery will reveal evidence that Defendants blatantly ignored the FLSA's explicit requirement that employees must be paid for *all* hours suffered or permitted to be worked and that underpaying its workers is an illegal practice.

128.    The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

129.    Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

130.    In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on his own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and the NYCRR.

131.    Plaintiff seeks certification of the following FRCP 23 class:

> Current and former construction / manual workers who performed any work for any of the Defendants in New York during the statutory period within ("Rule 23 Plaintiffs").

132.    All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

133.    Moreover, Plaintiff and the Rule 23 Plaintiffs have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. For instance, Plaintiff and the Rule 23 Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by Defendants' nonpayment or untimely payment of regular and overtime wages. Specifically, Plaintiff and the Rule 23 Plaintiffs were deprived of their ability to purchase by Defendants' nonpayment or untimely payment of regular and overtime wages, invest said wages, accrue interest on their wages,

or otherwise utilize the value that their wages would have held had they been properly paid to Plaintiffs.

### Numerosity & Ascertainability

134.    During the applicable NYLL limitations period, the Defendants have, in total, employed at least 50 other employees that are putative members of this class.

135.    The precise number of the Rule 23 Plaintiffs is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

### Common Questions of Law and/or Fact

136.    There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff, including whether their wages were timely paid on a weekly basis; (3) whether Defendants compensated all overtime wages due to Rule 23 Plaintiffs; (4) whether the Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by N.Y. Lab. Law § 195(3); (5) whether the Defendants have kept and maintained accurate and contemporaneous records of hours worked by Rule 23 Plaintiffs; (6) whether the Defendants kept and maintained records with respect to the compensation paid to Rule 23 Plaintiffs for each hour worked; (7) whether the Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (8) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and WTPA; and (9) if so, what constitutes the proper measure of damages.

### Typicality of Claims and/or Defenses

137.    As described herein, the Defendants employ(ed) Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL. The Plaintiff's claims are typical of the claims of the Rule 23

Plaintiffs whom he seeks to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendants in New York; Defendants failed to pay them properly for all regular and overtime hours worked; and Defendants did not provide them with accurate wage statements on each pay day as required by applicable law. Plaintiff and the Rule 23 Plaintiffs enjoy all of the same statutory rights under the NYLL, inclusive of the requirements to be paid on a timely basis, for all overtime compensation due, and to be furnished with accurate wage notices upon hire and wage statements on each payday.

138.    Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendants' failure to comply with the NYLL and WTPA. Plaintiff and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendants' defenses to those claims.

**Adequacy**

139.    Plaintiff, as described herein, worked the same or similar job duties as Rule 23 Plaintiffs throughout their employment with Defendants. Defendants did not pay Plaintiff on a timely basis, nor for all overtime hours due, nor did Defendants furnish Plaintiff with accurate wage statements on each payday, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

140.    Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have also subjected to the treatment alleged herein.

141.    Additionally, Plaintiff's counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law.  J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiff's counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

### **Superiority**

142.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

143.    Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

144.    Any lawsuit brought by a worker based in New York and employed by Defendants

would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

145.    Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

146.    Each hour that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs worked was for the Defendants' benefit.

147.    Defendants acted in the manner described herein so as to minimize overhead while maximizing their profits.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime under the FLSA*

148.    Plaintiff and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

149.    Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) *et seq*.

150.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

151.    As described above, each Defendant is an "employer" within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

152.    Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet the Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

153.    The Defendants' violations of the FLSA as described in this Complaint have been willful and intentional, demonstrated by their failure to post notice of the FLSA's requirements, to

maintain accurate contemporaneous time records, and to accurate advise Plaintiff of his rights to be paid. Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of Plaintiff nor FLSA Plaintiffs.

154.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rate of pay.

155.    Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and the NYCCRR*

156.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

157.    N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

158.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL and the NYCRR.

159.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action worked in excess of forty hours in a workweek, yet Defendants failed to compensate him/them in accordance with the NYLL's and the NYCRR's overtime provisions.

160.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his/their regular rate of pay.

161.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Minimum Wages in Violation of the NYLL*

162.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

163.     N.Y. Lab. Law § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked.

164.     As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, are employees within the meaning of the NYLL.

165.     As also described above, Defendants did not compensate Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, at the minimum hourly rate required by the NYLL for all hours worked.

166.     At the least, Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, are entitled to payment at the minimum wage for each and every hour worked for Defendants pursuant to the NYLL's minimum wage provisions.

167.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's minimum wage provisions.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Pay All Wages on a Timely Basis in Violation of the NYLL*

168.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

169.    NYLL §§ 191(1)(a) requires that employers pay their manual worker employees their wages on a weekly basis.

170.    As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff and any FLSA Plaintiffs based in New York are manual worker "employees" within the meaning of the NYLL.

171.    As also described above, Defendants failed to pay Plaintiff and any FLSA Plaintiffs based in New York that opts in to this action, all wages earned on a weekly basis as the NYLL requires.

172.    Plaintiff and any FLSA Plaintiffs based in New York that opts in to this action, are entitled to any unpaid wages, liquidated damages associated with any missed or late payment, interest, and attorneys' fees for Defendants' violations of the NYLL's requirement to pay all wages to manual workers on a weekly basis.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Accurate Wage Statements in Violation of the NYLL*

173.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

174.    Defendants are "employers" within the meaning of the NYLL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action are "employees" within the meaning of the NYLL.

175. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

176. As described above, Defendants, on each payday, failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action, with accurate wage statements containing the criteria required under the NYLL, specifically, NYLL § 195(1), *et seq*., and 12 NYCRR § 142-2.7, *et seq*.

177. Specifically, Defendants failed to furnish Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action with accurate wage statements on a weekly basis, and that if/when Defendants did furnish a wage statement, it failed to include, *inter alia*, their actual regular and overtime hours worked, corresponding regular and overtime rates of pay, and a correct pay period.

178. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt in to this action in the amount of $250.00, per Plaintiff, for each workday that the violations occurred, up to a statutory cap of $5,000.00, per Plaintiff.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Violations of the Anti-Retaliation Provisions under the NYLL § 215(1)*

179. Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

180. New York Labor Law § 215(1) provides that "No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer . . . that the employer has violated any provision of this chapter [the Labor Law]."

181.    As set forth above, Defendants retaliated against Plaintiff for engaging in protected activity. Specifically, Plaintiff frequently complained about Defendants' wage violations, as alleged herein, and in direct response to Plaintiff complaining of Defendants' wage violations, Defendants retaliated against Plaintiff by, among other things, cutting Plaintiff's hours and/or pay, making derogatory remarks about Plaintiff, and reassigning Plaintiff to other jobsites without justification. These actions, among others, were in direct response to Plaintiff raising informal complaints against Defendants for their failure to pay him the premium rates for overtime hours he worked in violation of the NYLL § 160.

182.    The temporal proximity between Plaintiff's complaints and Defendants' aggressive or retaliatory behaviors gives rise to an inference of retaliation.

183.    As a direct and proximate result of Defendants' conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, physical and emotional pain and suffering and loss of earnings for which he is entitled to an award of monetary damages and other relief.

**SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unlawful Age Discrimination in violation of the New York State Human Rights Law §296*

184.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

185.    N.Y. Exec. Law § 296(1)(a)(e) provides, that "[i]t shall be an unlawful discriminatory practice [f]or an employer, because of an individual's age … to … discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment," or "otherwise discriminate against any person

because he or she has opposed any practices forbidden under this article."

186.    Plaintiff was a member of a protected class on account of his age.

187.    As set forth above, Defendants cultivated a discriminatory, intolerable, and hostile work environment against Plaintiff on the basis of Plaintiff's age by subjecting Plaintiff to a hostile work environment, in the form of highly inappropriate and grossly improper agist remarks and abusive conduct which resulted in Plaintiff being continuously harassed and subjected to other disparaging treatment based upon his age, retaliated against Plaintiff in the terms, conditions, and privileges of employment on the basis of same, and terminated Plaintiff's employment because of his age, all in violation of N.Y. Exec. Law § 296.

188.    Plaintiff suffered adverse employment actions under circumstances tending to giving rise to an inference of discrimination.

189.    Defendants, as described above, subjected Plaintiff to a continuous practice and policy of discrimination, by carrying out a series of related and unremedied discriminatory acts over multiple years, culminating in Plaintiff's termination.

190.    As a direct and proximate result of Defendants' discriminatory conduct in violation of N.Y. Exec. Law § 296, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief against Defendants.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unlawful Age Discrimination under the New York City Human Rights Law §8-107*

191.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiffs that opt-in to this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

192.    The New York City Human Rights Law, NYC Administrative Code 8-107(a), provides that, "[i]t shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived age … of any person … to discharge from employment such person; or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

193.    Plaintiff was a member of a protected class on account of his age.

194.    As set forth above, Defendants cultivated a discriminatory, intolerable, and hostile work environment against Plaintiff on the basis of Plaintiff's age by subjecting Plaintiff to a hostile work environment, in the form of highly inappropriate and grossly improper agist remarks and abusive conduct which resulted in Plaintiff being continuously harassed and subjected to other disparaging treatment based upon his age, retaliated against Plaintiff in the terms, conditions, and privileges of employment on the basis of same, and terminated Plaintiff's employment because of his age, all in violation of NYC Administrative Code 8-107(a).

195.    Plaintiff suffered adverse employment actions under circumstances tending to giving rise to an inference of discrimination.

196.    Defendants, as described above, subjected Plaintiff to a continuous practice and policy of discrimination, by carrying out a series of related and unremedied discriminatory acts over multiple years, culminating in Plaintiff's termination.

197.    As a direct and proximate result of Defendants' discriminatory conduct in violation of NYC Admin. Code 8-107(a), Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including, without limitation, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief against Defendants.

## DEMAND FOR A JURY TRIAL

198.    Pursuant to FRCP 38(b), Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants, and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in he unlawful practices, policies, customs, and usages set forth herein;

c.    An order restraining Defendants from any retaliation against Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs for participation in any form in this litigation;

d.    Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to FLSA Plaintiffs, apprising them of the pendency herein, permitting them to assert timely FLSA claims herein by filing Consents to Sue pursuant to 29 U.S.C. §216(b), and tolling of the statute of limitations;

e.    Designation of this action as a Fed.R.Civ.P. 23(b)(3) class action on behalf of Plaintiff and Rule 23 Plaintiffs, and prompt issuance of notice pursuant to Fed.R.Civ.P. 23(c)(2) to the Rule 23 Plaintiffs, apprising them of the pendency of this action, and tolling of the statute of limitations;

f.    Designation of Plaintiff and undersigned counsel as class and collective action representatives under the FRCP and FLSA;

g.      All damages that Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs would have received but for Defendants' unlawful payment practices;

h.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

i.      Awarding Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs, their costs and disbursements incurred in connection with this action, as well as their reasonable attorneys' fees, expert witness fees and other costs;

j.      Awarding Plaintiff with a service award for his role as class and collective action representative, and in recognition for his dedication to the Rule 23 Class and FLSA Plaintiffs and willingness to come forward as lead Plaintiff on behalf of Rule 23 Plaintiffs and FLSA Plaintiffs;

k.      Pre-judgment and post-judgment interest, as provided by law; and

l.      Granting Plaintiff, Rule 23 Plaintiffs, and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated:  New York, NY
        November 7, 2024

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By:   *Avraham Y Scher*
      Jon L. Norinsberg, Esq.
      Michael R. Minkoff, Esq.
      Avraham Y. Scher, Esq.
      110 East 59th Street, Suite 2300
      New York, New York 10022
      Tel.: (212) 227-5700
      *Attorneys for Plaintiff*
      *and Putative Class and Collective*